Minute Order Form (rev. 12/90)

## UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF ILLINOIS

| Name of Assigned Judge or Magistrate Judge | ROBERT W. GETTLEMAN | Sitting Judge if Other Than Assigned Judge | |
|---|---|---|---|
| Case Number | 00 C 6594 | Date | May 31, 2001 |
| Case Title | Nakajima All Co. Ltd.  v  SL Ventures Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd-party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [use listing in "MOTION" box above]
(2) ☐ Brief in support of motion due _____
(3) ☐ Answer brief to motion due _____ Reply to answer brief due _____
(4) ☐ Ruling/Hearing on _____ set for _____ at _____
(5) ☑ Status hearing ☐ held ☐ continued to ☐ set for ☑ re-set for 7/11/01 at 9:00
(6) ☐ Pretrial conf. ☐ held ☐ continued to ☐ set for ☐ re-set for _____ at _____
(7) ☐ Trial ☐ Set for ☐ re-set for _____ at _____
(8) ☐ ☐ Bench Trial ☐ Jury Trial ☐ Hearing held and continued to _____ at _____
(9) ☐ This case is dismissed ☐ without ☐ with prejudice and without costs ☐ by agreement ☐ pursuant to ☐ FRCP 4(j) (failure to serve) ☐ General Rule 21 (want of prosecution) ☐ FRCP 41(a)(1) ☐ FRCP 41(a)(2)

(10) ☑ [Other docket entry] Memorandum opinion and order entered. Accordingly, defendants' motion to dismiss is denied as to count I and granted without prejudice as to counts II, III and IV. Carolina is given leave to file a counterclaim by 6/19/01. SL and Lowry shall respond by 7/9/01.

(11) ☑ [For further detail see ☐ order on the reverse of ☑ order attached to the original minute order form.]

| | No notices required, advised in open court. | | | number of notices | |
|---|---|---|---|---|---|
| | No notices required. | | | | |
| ☑ | Notices mailed by judge's staff. | FILED FOR DOCKETING JUN 0 4 2001 | | date docketed | Document # |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | 01 JUN -1 AM 10:41 | | docketing dpty. initials | 54 |
| | Mail AO 450 form. | | | | |
| | Copy to judge/magistrate Judge. | | | date mailed notice | |
| | courtroom deputy's Initials | Date/time received in central Clerk's Office | | mailing dpty. initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NAKAJIMA ALL CO. LTD., <br><br> Plaintiff, <br><br> v. <br><br> SL VENTURES, CORP. and STEPHEN LOWY, <br><br> Defendants. <br><br> SL VENTURES, CORP., <br><br> Counter-plaintiff and <br> Counter-defendant <br><br> v. <br><br> CAROLINA WHOLESALE OFFICE MACHINE CO., INC., <br><br> Counter-defendant and <br> Counter-plaintiff | No. 00 C 6594 <br><br> Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

In the course of being sued by Nakajima All Co., Ltd. ("Nakajima"), defendants SL Ventures, Corp. ("SL") and Stephen Lowy ("Lowy"), SL's president and principal shareholder, filed a third party claim against Carolina Wholesale Office Machine Co., Inc. ("Carolina"), which then filed counterclaims against both defendants alleging violations of §43(a) of the Lanham Act, 15 U.S.C. §1125(a) (Count I), common law unfair competition (Count II), the Illinois Consumer Fraud and Deceptive Practices Act ("Consumer Fraud Act"), 815 ILCS 505/1 *et seq.* (Count III), and the Uniform Deceptive Trade Practices Act ("UDTPA"), 815 ILCS 510/1 *et seq.* (Count IV). SL and Lowy (together, "defendants") have moved to dismiss Carolina's

counterclaims pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6). For the reasons set forth below, the motion is denied in part and granted in part.

## FACTS

For purposes of a motion to dismiss, the court accepts the factual allegations of the counterclaim as true and draws all reasonable inferences in favor of Carolina. See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

Nakajima manufactures and sells typewriters equipped with word processing and spell checking capabilities, along with the parts and accessories for those machines. Since 1989, Nakajima has marketed and sold those products in the United States and elsewhere using distinctive marks, which have been registered with the United States Patent and Trademark Office.

According to Carolina, Nakajima entered into distribution and license agreements with SL and Lowy in 1994, giving SL the exclusive right to distribute Nakajima products in the United States. On June 30, 2000, Nakajima advised SL that as of July 31, 2000, Nakajima was terminating its prior agreements with SL. Accordingly, Nakajima demanded that SL cease using Nakajima's marks and cease holding itself out as the exclusive Nakajima distributor in the United States as of that date.

On or about August 3, 2000, and November 8, 2000, respectively, Carolina entered into distribution and license agreements with Nakajima, making Carolina the exclusive United States and Caribbean distributor of Nakajima products and the only company licensed to use Nakajima's marks within that area. Carolina alleges "on information and belief" that "since July 31, 2000," SL has "continued to use" Nakajima's marks and has "continued to misrepresent to

customers that SL . . . is the exclusive distributor and/or an authorized distributor of [p]roducts bearing" Nakajima's marks. Likewise, Carolina alleges "on information and belief" that Lowy "has been personally misrepresenting to customers that SL . . . is the exclusive distributor and/or authorized distributor of the [p]roducts and licensee [sic] of [Nakajima's marks] since July 31, 2000." Further, Carolina claims that: "As the true exclusive distributor of the [p]roducts since August 3, 2000, Carolina Wholesale has been damaged" by defendants' actions.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A claim may be dismissed only if it is beyond doubt that under no set of facts would the claimant's allegations entitle him to relief. Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Travel All Over the World, 73 F.3d at 1429-30. The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

## DISCUSSION

Defendants raise three major contentions in arguing that Carolina's counterclaims should be dismissed. First, they argue that Carolina lacks standing to bring any of its claims pursuant to the terms of the distribution and licensing agreements it signed with Nakajima. Defendants also argue that Count III fails to state a claim because Carolina has not alleged a sufficient consumer nexus to allow it to bring suit under the Consumer Fraud Act. Finally, defendants argue that Counts II, III, and IV are not alleged with the particularity required by Fed. R. Civ. P. 9(b). The court will address each of defendants' arguments in turn.

3

## I. Standing under the Lanham Act

According to defendants, Carolina lacks standing to bring a claim under the Lanham Act because the distribution and licensing agreements it signed with Nakajima provide that Nakajima alone is authorized to initiate claims with regard to any infringement or improper use of Nakajima's marks. See Finance Inv. Co. (Bermuda) v. Geberit AG, 165 F.3d 526, 531-32 (7th Cir. 1998) (affirming summary judgment against plaintiff licensees where "the express terms of the [plaintiffs'] license prohibited any of them from bringing suit in their own capacity") ("Because the license is the sole source giving the plaintiffs any interest in the . . . mark, that same license's refusal to give them the right to sue under these circumstances strips them of the right to raise a §43(a) claim.")

The court need not address defendants' argument, however, because even if they are correct about the ramifications of Finance Investment on Carolina's claims, Nakajima and Carolina have represented to the court that Carolina received permission from Nakajima prior to filing its counterclaims, pursuant to the license agreement between the two.[1] Thus, defendants' motion to dismiss the counterclaims on this basis is denied.

## II. Consumer Nexus under the Consumer Fraud Act

Defendants' next contention is that Carolina has failed to allege a sufficient consumer nexus to sustain a claim under the Consumer Fraud Act.

---

[1] For the sake of expediency and convenience, the court obtained these assurances from counsel for both Nakajima and Carolina during a status hearing with all parties present on May 16, 2001, and agreed to rule accordingly to prevent the need for Carolina to file an amended counterclaim on this basis.

4

The Consumer Fraud Act prohibits the "employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact . . . in the conduct of any trade or commerce." 815 ILCS §505/2. "As its name indicates, the Consumer Fraud Act is primarily concerned with protecting consumers." Industrial Specialty Chems. v. Cummins Engine Co., 902 F. Supp. 805, 811 (N.D. Ill. 1995). Under the Act, a "consumer" is defined as one "who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILCS 505/1(e).

Those bringing Consumer Fraud Act claims need not be consumers, however. See 815 ILCS 505/10(a); 815 ILCS 505/1(c); Industrial Speciality Chems., 912 F. Supp. at 811; D.K. Heating Sys. v. Warmly Yours.com, Inc., 2000 U.S. Dist. LEXIS 610, *13-14, 2000 WL 97283, *5 (N.D. Ill. Jan. 25, 2000). "The Consumer Fraud Act also protects business persons from fraud and unfair competition." Mitsubishi Elec. Corp. v. IMS Tech., 1997 U.S. Dist. LEXIS 15350, *26, 1997 WL 630187, *9 (N.D. Ill. Sept. 30, 1997) (citing Law Offices of William J. Stogsdill v. Cragin Fed. Bank for Sav., 645 N.E.2d 564, 565 (Ill. App. Ct. 1995)).

In the instant case, Carolina, a wholesale distributor of Nakajima products, does not meet the definition of a "consumer" under the Consumer Fraud Act.[2] Thus, Carolina must establish a nexus to consumer protection concerns in pleading its claim under the Consumer Fraud Act. Anchor Mortg. Corp. v. Certified Credit Reporting, Inc., 2000 U.S. Dist. LEXIS 16867, *5, 2000

---

[2] Carolina does not claim that it is a consumer for purposes of the statute. Instead, Carolina maintains that it "has made allegations sufficient to implicate consumer concerns under Illinois law and the pleading standards of this [c]ourt."

5

WL 1700147, *2 (N.D. Ill. Nov. 8, 2000) (holding that "a nexus to consumer protection is required only if the plaintiff is not a 'consumer'")[3]; see also J.C. Whitney & Co. v. Renaissance Software Corp., 2000 U.S. Dist. LEXIS 6180, *55, 2000 WL 556610, *16 (N.D. Ill. Apr. 19, 2000), adopted in relevant part, Whitney & Co. v. Renaissance Software Corp., 98 F. Supp. 2d 981 (N.D. Ill. 2000). This is because the Consumer Fraud Act, "does not authorize a suit by a non-consumer where there is no injury to consumers." Learning Curve Toys, L.P. v. PlayWood Toys, Inc., 2000 U.S. Dist. LEXIS 5130, *7, 2000 WL 343497, *2 (N.D. Ill. Mar. 31, 2000) (internal quotations and citations omitted).

Carolina maintains that it has pleaded a sufficient consumer nexus. According to Carolina, it has alleged that defendants' misrepresentations (that SL is the exclusive distributor and/or an authorized distributor of Nakajima products) "are likely to cause confusion or to cause mistake or to deceive as to the affiliation, connection, or association of SL . . . and Nakajima." Further, Carolina claims, it has also alleged that defendants made these misrepresentations

---

[3] Judge Plunkett's holding in Anchor Mortgage is narrower than that previously expressed by the Seventh Circuit. See Athey Products Corp. v. Harris Bank Roselle, 89 F.3d 430, 436-37 (7th Cir. 1996) ("[Illinois intermediate appellate courts] and federal district courts in Illinois have uniformly held that claims under the Act must meet the consumer nexus test by alleging that the conduct involves trade practices directed to the market generally or otherwise implicates consumer protection concerns."). According to Judge Plunkett, the Athey court's statement is "far too broad" given the fact that "many state and federal courts have decided that the consumer nexus requirement applies only to plaintiffs that are not consumers." See Anchor Mortgage, 2000 U.S. Dist. LEXIS at *8 n.1, and at *5-8, WESTLAW CITE (listing cases). Judge Plunkett further notes that the Athey court's statement was supported by cases that "involved business-plaintiffs that were not consumers."

The court agrees with Judge Plunkett's assessment of the statement in Athey. See Duchossois Indus. v. Crawford & Co., 2001 U.S. Dist. LEXIS 444, *9, 2001 WL 59031, *3-4 (N.D. Ill. Jan. 12, 2001); Peter v. Stone Park Enters., L.L.C., 1999 U.S. Dist. LEXIS 11385, *17-18, 1999 WL 543210, *6 (N.D. Ill. July 22, 1999).

"willfully and with intent to mislead customers, and to create a likelihood of public confusion or misunderstanding."

There are two problems with Carolina's arguments, however. First, the counterclaim paragraphs that Carolina cites as containing the above allegations are neither part of, nor incorporated into, Carolina's Consumer Fraud Claim. Second, as defendants point out, the alleged "customers" to which Carolina refers above are not identified as consumers, at least as that term is defined by the Consumer Fraud Act. Defendants assert that the customers of distributors such as Carolina and defendants "purchase goods for resale, which plainly makes them non-consumers" under the Consumer Fraud Act. See 815 ILCS 505/1(e). If defendants are correct,[4] Carolina cannot maintain their Consumer Fraud Act claim because it cannot allege a consumer nexus. If defendants are incorrect, Carolina should allege (in the appropriate count or by incorporation) that defendants' misrepresentations were made to consumers.

In conclusion, because the allegations that Carolina relies on to support its pleading of a consumer protection nexus are not incorporated into Carolina's Consumer Fraud Act claim, and because even if they were Carolina still has not pleaded a sufficient consumer protection nexus, the court dismisses Count III. As Count III now reads, Carolina is merely asserting that

---

[4] The court has scoured Carolina's counterclaim and can find no allegation contradicting defendants' assertion. Carolina does claim that it is "primarily engaged in the business of the sale of office machines, equipment, accessories, parts and supplies," but it does not say to whom those sales are made. Carolina does, however, identify itself as a wholesale distributor, which means that it presumably sells Nakajima products to retailers. Moreover, Carolina makes no reference whatever to "consumers" in its counterclaims. (Despite this fact, however, Carolina incorrectly asserts in its response brief that its counterclaim alleges that defendants "used Nakajima's trademarks in a manner that is likely to lead *consumers* to be confused regarding its status as an exclusive distributor.")

7

defendants have been misrepresenting to "customers" that SL is "the exclusive distributor and/or an authorized distributor" of Nakajima products and that, as a result, "Carolina [the true exclusive distributor of Nakajima products]. . . has been or is likely to be substantially injured in its business . . . resulting in lost revenues and profits, and diminished goodwill and reputation." As Judge Grady explained in Republic Tobacco, L.P. v. North Atl. Trading Co., 1999 U.S. Dist. LEXIS 6098, *27-28, 1999 WL 261712, *9 (N.D. Ill. Apr. 9, 1999), "[a]lleged statements to distributors and retailers do not constitute the required connection to consumers." Further, claims that such statements "implicate consumer protection concerns by wrongfully diverting sales from [Carolina]," are simply "far too indirect to satisfy the consumer nexus requirements." Id. Like Republic Tobacco, however, the court dismisses Count III without prejudice since it may be that Carolina can cure the defects explained above.[5]

---

[5] In so holding, the court does not reach the additional standing argument raised by defendants in a footnote of their reply brief. Carolina is advised to monitor the progress of the case of Oliveira v. Amoco Oil Co., 726 N.E.2d 51, 60-62 (Ill. App. Ct. 4th Dist. 2000), appeal allowed, 734 N.E.2d 895 (2000).

**III. Rule 9(b) Particularity Requirement**

Defendants next contend that Carolina has failed to meet the pleading requirement of Fed. R. Civ. P. 9(b), which provides that allegations of fraud or mistake are to be pleaded with particularity, with respect to Counts II,[6] III [7] and IV. Carolina argues that these counts do not sound in fraud and are therefore not subject to the requirements of Rule 9(b).

The court finds that because Counts II, III, and IV sound in either fraud or mistake, they are covered by Rule 9(b). The *only* allegation of defendants' wrongdoing in these counts is Carolina's contention, "on information and belief," that "since July 31, 2000," defendants have "misrepresent[ed]" to "customers" that SL "is the exclusive distributor and/or an authorized distributor" of Nakajima products. This alleges one of two things: either defendants knew they were no longer the exclusive distributor and/or an authorized distributor of Nakajima products and they lied by misrepresenting their status, or, at the very least, defendants did not know they were no longer the exclusive Nakajima distributor and/or an authorized distributor and they mistakenly misrepresented their status accordingly. Regardless, Rule 9(b) applies because it

---

[6] As an initial matter, the court disposes of Carolina's claim that "there is nothing whatsoever within the text of Rule 9(b) or any of the authority interpreting the Rule to indicate that a claim brought under the common law of unfair competition falls within the purview of the Rule." As defendants point out, the UDTPA is simply a codification of common law unfair competition. Mars, Inc., v. Curtiss Candy Co., 290 N.E.2d 701, 704 (Ill. App. Ct. 1st Dist. 1972). Also, as discussed below, Carolina's unfair competition claim relies on the same allegation of defendants' supposed wrongdoing as do its UDTPA and Consumer Fraud Act claims. Thus, the court sees no reason why Carolina's unfair competition claim should not be assessed under the same standard as its claim under the UDTPA.

[7] Although Count III is dismissed on other grounds, the court determines whether Rule 9(b) applies to that claim because Carolina may file an amended Consumer Fraud Act counterclaim.

9

provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally." See B. Sandfield, Inc., v. Finlay Fine Jewelry Corp., 1993 U.S. Dist. LEXIS 17703, *7-11, 1993 WL 515863, *2-3 (N.D. Ill. Dec. 13, 1993) (applying Rule 9(b) to Consumer Fraud Act and UDTPA claims involving allegations of pricing misrepresentations made to customers).

This finding is supported by Rule 9(b)'s purpose of protecting defendants' reputations, preventing fishing expeditions, and providing adequate notice of Carolina's claims to defendants. See Vicom, Inc. v. Harbridge Merchant Servs., Inc., 20 F.3d 771, 777 (7th Cir. 1994). In the instant case, Carolina alleges that defendants misrepresented their distributorship status with Nakajima to "customers." This accusation certainly threatens defendants' reputations among the "customers" (whomever they may be). Further, by making these allegations "on information and belief," Carolina appears to be engaging in just the sort of fishing expedition Rule 9(b) was enacted to prevent. And, finally, Carolina's vague references to the individuals to whom defendants allegedly made these representations and the dates on which they were supposedly made—to "customers" and "since July 31, 2000"—are insufficient to put defendants on notice of the claims against them. Thus, applying Rule 9(b) to the instant case is not only appropriate under the unambiguous language of the rule itself, doing so also serves the purposes for which the rule was enacted.

Carolina quotes Gaddy v. Galarza Motor Sport L.T.D., 2000 U.S. Dist. LEXIS 13881, *9, 2000 WL 1364451, *4 (N.D. Ill. Sept. 20, 2000), for the proposition that the Consumer Fraud Act "prohibits not only fraud, but a broad array of unfair practices." True, but the court finds that

10

Carolina's allegations in the instant case sound in fraud or mistake and are therefore subject to the Rule 9(b) particularity requirement. "A violation of the [Consumer Fraud Act] based on misrepresentation or fraud must be plead with the particularity of Rule 9(b) of the Federal Rules of Civil Procedure." Appraisers Coalition v. Appraisal Inst., 845 F. Supp. 592, 608-09 (N.D. Ill. 1994) (citing Ramson v. Layne, 668 F. Supp. 1162, 1170 (N.D. Ill. 1987)); see also Petri v. Gatlin, 997 F. Supp. 956, 973 (N.D. Ill. 1997); Azimi v. Ford Motor Co., 977 F. Supp. 847, 852-53 (N.D. Ill. 1996); Karpowicz v. GMC, 1997 U.S. Dist. LEXIS 10604, *16 (N.D. Ill. July 17, 1997) (finding that Rule 9(b) "applies both to claims for common-law fraud, as well as to claims under the ICFA") (citing Appraisers Coalition v. Appraisal Inst., 845 F. Supp. 592, 609 (N.D. Ill. 1994) (applying 9(b) to claims of defamation and commercial disparagement)).

Carolina also cites Recreation Servs. v. Odyssey Fun World, 952 F. Supp. 594 (N.D. Ill. 1997), a case in which the plaintiff, who owned the marks "GREAT ODYSSEY FAMILY FUN CENTERS" and "THE GREAT ODYSSEY Family Fun Centers and Design," sued the defendant under the Consumer Fraud Act for using the mark "ODYSSEY FUN WORLD," which the plaintiff alleged caused actual confusion as well as posing the likelihood of further confusion among consumers. Id. at 596. Judge Shadur assumed (without deciding) that the plaintiff's allegations sounded in fraud and concluded that the particularity requirements under 9(b) were met "by the Complaint's straightforward allegations as to [defendant's] conduct of the self-same type of business as [plaintiff] under a confusingly similar name." Id. at 598. Thus, Recreation Services is inapposite.

Finally, Carolina cites several cases holding that Rule 9(b) does not apply to the trade disparagement claims made in those cases under §2(8) of the UDTPA or to the Consumer Fraud

11

Act claims that rely on those same allegations. See Mitsubishi, 1997 U.S. Dist. LEXIS at *18-20, 26-31, 1997 WL at *7, *10-11; Hoffman v. Szyszko, 1995 U.S. Dist. LEXIS 12680, *13-17, 1995 WL 519815, *4-5 (N.D. Ill. Aug. 29, 1995); Pain Prevention Lab, Inc. v. Electronic Waveform Labs, Inc., 657 F. Supp. 1486, 1494-95 (N.D. Ill. 1987); see also Floorcoverings Int'l, Ltd. v. Swan, 2000 U.S. Dist. LEXIS 5855, *12, 2000 WL 528480, *4-5 (N.D. Ill. Apr. 25, 2000) (involving claim under UDTPA only). To begin, these cases are distinguished because Carolina is not alleging trade disparagement under the UDTPA in the instant case; instead, Carolina's UDTPA claim alleges that defendants' misrepresentations "represent their efforts to pass off [SL's] goods and services as those of another and to create a likelihood of public confusion or misunderstanding"—allegations that track the language of §§2(1) and (2) of the UDTPA, and that the court finds sound in fraud or mistake.[8]

In addition, to the extent the cases cited by Carolina conclude that allegations of trade disparagement under §2(8) of the UDTPA do not aver fraud or mistake under Rule 9(b), this court respectfully disagrees. According to §2(8) of the UDTPA, a person commits trade disparagement when he "disparages the goods, services or business of another by *false or misleading* representation of fact." (emphasis added). Given that definition, Rule 9(b) should apply to such trade disparagement claims under the UDTPA because, as is true in the instant case, allegations of false or misleading statements tend to sound in fraud or mistake. Simply calling a claim "trade disparagement" does not exempt it from averring fraud or mistake.

---

[8] In addition, Carolina did not incorporate its UDTPA claim into its Consumer Fraud Act claim. Thus, even if Carolina had alleged trade disparagement under §2(8) of the UDTPA, and even if the court found that that allegation did not sound in fraud or mistake (see below), the court would still apply Rule 9(b) to Carolina's Consumer Fraud Act claim.

12

Moreover, Carolina's argument based on Mitsubishi, Hoffman, Pain Prevention, and Floorcoverings simply does not follow. According to Carolina, these cases support the conclusion that Carolina's claims "differ fundamentally from fraud claims" because in fraud cases "the defendant personally makes misrepresentations to the plaintiff, so the plaintiff should be able to describe those misinterpretations with particularity in the complaint." Conversely, Carolina asserts, in "trade disparagement/unfair competition cases . . . the defendant makes misrepresentations to third parties or to the consuming public generally speaking, and the plaintiff may be unable to allege those statements with particularity." "Thus," Carolina concludes, "Rule 9(b)'s requirements do not apply to such claims." Nonsense. The court will not conclude that Carolina's claims do not sound in fraud or mistake based on the fact that defendants' alleged misrepresentations were not made to Carolina directly.

Two distinct inquiries must be made under Rule 9(b) in the instant case. The first is whether Carolina's UDTPA and Consumer Fraud Act claims sound in fraud or mistake. The second (which arises only if the court determines that the claims do sound in fraud or mistake) is whether Rule 9(b) has been met and, if it has not, whether the exception to Rule 9(b) should apply because the facts Carolina needs to allege with particularity are under the defendant's exclusive control. See Yates v. Newell Rubbermaid Inc. (In re Newell Rubbermaid Sec. Litig.), 2000 U.S. Dist. LEXIS 15190, *33 (N.D. Ill. Oct. 2, 2000) ("It is well established in this Circuit that a party may be excused from Rule 9(b)'s requirement of pleading with particularity if the information that he is required to plead rests exclusively within the defendants' control or is otherwise unavailable to him.") (citing Corley v. Rosewood Care Center, Inc., 142 F.3d 1041, 1051 (7th Cir. 1998); Goren v. New Vision Int'l, Inc., 156 F.3d 721, 729 n. 6 (7th Cir. 1998)).

13

The court has determined that Carolina's allegations sound in fraud or mistake, making Rule 9(b) applicable. That rule requires Carolina to state at minimum, "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated." Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990). Carolina's allegations do not meet these specifications. Accordingly, the court next determines whether the exception to Rule 9(b) applies in the instant case.

In that regard, the court finds that while it is true that defendants' alleged misrepresentations were made to "customers" and not to Carolina directly, there is no reason to apply the exception to the 9(b) particularity requirement in the instant case because the substance of those misrepresentations is not under defendants' exclusive control. See Jepson v. Makita Corp., 34 F.3d 1321, 1328 (7th Cir. 1994) (finding that "the plaintiffs cannot . . . complain of an inability to ascertain the details of . . . communications [because] . . . they have as much access as the defendants to the customers who can flesh out the circumstances of the . . . [misrepresentations] involved"); cf. B. Sanfield, Inc. v. J.C. Penney Co., 1993 U.S. Dist. LEXIS at *9-10, 1993 WL at *3 (noting that where medium for disseminating alleged misrepresentations is "extremely broad, if not absolutely public," the exception to pleading with particularity is "strikingly inappropriate"). Moreover, even if the exception to Rule 9(b) did apply in the instant case, Carolina should have alleged its grounds for the suspicions it avers "on information and belief." See Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 924 (7th Cir. 1992). Carolina has failed in this regard as well.

Thus, Counts II, III and IV are insufficiently pleaded and therefore dismissed without prejudice.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is denied with respect to Count I but granted without prejudice with respect to Counts II, III, and IV. Carolina is given leave to file an amended counterclaim consistent with this opinion on or before June 19, 2001. SL and Lowy shall respond thereto on or before July 9, 2001. The status report by all parties is continued from June 16, 2001, to July 11, 2001, at 9:00a.m.

**ENTER:** May 31, 2001

Robert W. Gettleman
United States District Judge